UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60213-CIV-ALTONAGA/Brown

VOZZCOM, INC.,

    Plaintiff,

vs.

XL SPECIALTY INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant, XL Specialty Insurance Company's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law ("Motion") [D.E. 4], filed on March 1, 2010; and Defendant, XL Specialty Insurance Company's Motion to Stay Discovery [D.E. 25], pending a ruling on the Motion to Dismiss. The Court has carefully considered the parties' written submissions and applicable law.

**I. BACKGROUND**

This case arises from a dispute over insurance coverage for legal defense costs incurred by a company sued by two of its former employees for wage and hour law violations. Vozzcom, Incorporated ("Vozzcom") filed suit for breach of contract and declaratory relief against XL Specialty Insurance Company ("XL Specialty"), seeking a determination that the two claims are covered under the XL Specialty Policy (the "Policy"). This is the third in a series of cases brought by Vozzcom against its insurers. *See Vozzcom, Inc. v. Beazley Ins. Co., Inc.* ("*Vozzcom I*"), 666 F. Supp. 2d 1321 (S.D. Fla. 2009); *Vozzcom, Inc. v. Great Am. Ins. Co. of New York* ("*Vozzcom II*"),

Case No. 10-60213-CIV-ALTONAGA/Brown

666 F. Supp. 2d 1332 (S.D. Fla. 2009), *aff'd*, 2010 WL 1226084 (11th Cir. March 31, 2010).  Much like the earlier litigation, this case also involves an insurance policy, employee suits for wage and hour violations against Vozzcom, and the relatedness of those suits.

**A.    The Insurance Policy**

XL Specialty issued a professional liability insurance policy to Vozzcom for the period from February 1, 2009 to February 1, 2010.  (*See* Mot. at 2).  It is a "Claims-Made" policy, as noted on the first page of the Policy declarations:

> **EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS IS A CLAIMS-MADE POLICY.**
>
> **NOTICE: THE LIABILITY COVERAGE SECTIONS OF THIS POLICY APPLY ONLY TO CLAIMS OR . . . COMPLIANCE REQUESTS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTION EXTENSION PERIOD.**

(*Id.*, Ex. A at 2).  The Policy obligates XL Specialty "to defend any **Claim** against any **Insured** covered under the Liability Coverage Parts of this Policy, even if such **Claim** is false, fraudulent or groundless." (*Id.*, Ex. A at 19).  Section 2 of Endorsement 11 provides coverage for claims under the Fair Labor Standards Act (FLSA), limited to $100,000 in costs.  (*Id.*, Ex. A at 46).

The Employment Practices Liability Coverage ("EPLC") Part provides that "[t]he Insurer shall pay on behalf of the **Insureds Loss** resulting from a **Claim** first made against the **Insureds** during the **Policy Period** . . . for a **Wrongful Act**." (*Id.*, Ex. A at 32).  A claim is defined, in part, as "1. any written notice, including any request to toll or waive a statute of limitation or any such notice seeking monetary or non-monetary relief; [or] 2. any civil proceeding in a court of law or

2

Case No. 10-60213-CIV-ALTONAGA/Brown

equity . . . ." (*Id.*, Ex. A at 19).  The Policy defines "**Interrelated Wrongful Acts**" as "**Wrongful Acts** which are based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related or series of related facts, circumstances, situations, transactions or events." (*Id.*).  According to the Policy, "All **Claims** . . . arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** . . . and shall be deemed to have been made at the earliest time at which the earliest **Claim** . . . is made or deemed to have been made pursuant to GENERAL CONDITIONS C.1.a or, if applicable, GENERAL CONDITIONS C.1.b." (*Id.*, Ex. A at 22).

The Policy includes three pertinent exclusions: a prior litigation exclusion, a prior notice exclusion and a specific claims exclusion.  The prior litigation (item A.2 below) and prior notice (item A.3 below) exclusions appear in the EPLC Part:

> A. The Insurer shall not be liable to make any payment for **Loss**, and shall have no duty to defend or pay **Defense Expenses**, in connection with any **Claim** made against any **Insured**:
>
> . . .
>
> 2. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation, administrative or regulatory proceeding or arbitration or other alternative dispute resolution proceeding which was brought before the Pending or Prior Proceeding Date set forth in ITEM 7.(B) of the Declarations;
>
> 3. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**

3

Case No. 10-60213-CIV-ALTONAGA/Brown

>which, before the Inception Date of this Policy, was the subject of any notice given under any other employment practices liability policy or similar policy; []
>
>. . .

(*Id.*, Ex. A at 34). The specific claims exclusion appears in an endorsement and excludes from coverage "any Claim in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any proceedings or any fact, circumstance or situation underlying or alleged therein: Teixiera [sic], DaSilva." (*Id.*, Ex. A at 42).

**B.     *Vozzcom I* and *Vozzcom II***

In two prior cases, Vozzcom sought declaratory relief for insurance coverage that had been denied by its carriers for FLSA suits brought by former employees. *See Vozzcom I*, 666 F. Supp. 2d 1321; *Vozzcom II*, 2010 WL 1226084. In *Vozzcom I*, Vozzcom sued Beazley Insurance Company, Inc. ("Beazley") and Great American Insurance Company of New York ("Great American") for coverage of a suit brought by Francisco DaSilva ("DaSilva"). *See* 666 F. Supp. 2d at 1322. Beazley's policy period ran from January 1, 2007 through January 1, 2008; Great American's policy covered January 1, 2008 through December 31, 2008. *See id.* at 1323. After the Beazley policy period ended, on January 17, 2008, DaSilva filed suit (the "*DaSilva* claim") against Vozzcom for FLSA violations during his employment as a cable technician from September 2006 to April 2007. *See id.*

Vozzcom sought coverage for the *DaSilva* claim from Great American, but it was denied on the ground that the claim "arose" during the Beazley coverage period as evidenced by an earlier suit

4

Case No. 10-60213-CIV-ALTONAGA/Brown

filed in June 2007 (the "*Teixeira* claim") by another former employee, Claudio Teixeira ("Teixeira"). *See id.* Like DaSilva, Teixeira was a former cable technician who claimed Vozzcom violated the FLSA during his November 2006 to April 2007 employment. *See id.* Beazley provided legal counsel and paid for Vozzcom's legal defense costs for the earlier *Teixeira* claim, but it denied coverage for the *DaSilva* claim because the claim was made after the Beazley policy had expired. *See id.*

On cross-motions for summary judgment, the Court found for Vozzcom against Beazley because the *DaSilva* claim was related to the *Teixeira* claim under the terms of the policy and the claim had been reported within the 60-day period following policy termination as permitted by the policy. *See id.* at 1330. The Court also entered summary judgment for Great American because its policy was a "claims made" policy and the *DaSilva* claim was effectively made at the same time as the *Teixeira* claim. *See id.* at 1331.

Even before *Vozzcom I* was decided and five days after the Great American policy expired, former employee Richard Elliot filed a federal class action suit (the "*Elliot* claim") against Vozzcom. *See Vozzcom II*, 666 F. Supp. 2d 1332. (*See also* Notice of Removal [D.E. 1], Ex. A at 3). Vozzcom sought coverage for the *Elliot* claim from Great American, but Great American denied it and Vozzcom again filed suit against its insurer. *See Vozzcom II*, 666 F. Supp. 2d at 1335. The Court granted summary judgment in favor of Great American and against Vozzcom because the *Elliot* claim was related to the earlier *Teixeira* and *DaSilva* claims. *See id.* at 1340-41. The 11th Circuit Court of Appeals affirmed, concluding that under the terms of the Great American policy, "the

Case No. 10-60213-CIV-ALTONAGA/Brown

*Teixeira*, *DaSilva*, and *Elliot* actions are to be considered a single claim." *Vozzcom II*, 2010 WL 1226084, at *4.

**C.     The Current Claims**

Vozzcom now seeks declaratory relief and alleges breach of contract for XL Specialty's denial of coverage of two other claims by employees. However, a review of the facts surrounding the *Elliot* claim is essential to framing the current dispute. On January 7, 2009 – prior to the February 1, 2009 effective date of the XL Specialty policy period, Richard Elliot filed his federal class action suit (the "*Elliot* claim") against Vozzcom and its two corporate officers, Dorren Vozzola and David Vozzola, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, for failure to pay overtime compensation. (*See* Mot., Ex. B at 2-7). Elliot was employed as a "non-exempt . . . cable technician" by Vozzcom from January to July 2006. (*Id.*, Ex. B at 2-3). Paragraph 9 of the *Elliot* claim defines the purported class:

> The asserted class for this collective action includes all current and former employees similarly situated to Plaintiff, which includes all hourly or piece rate employees of Defendants who performed cable installation, repair, auditing, disconnection, repair or related services and labor of a non-exempt nature . . . at any premises nationwide in furtherance of the business of one or all Defendants (the "asserted class"), and who worked in excess of forty (40) hours during one or more work weeks on or after January 2006 (the "material time").

(*Id.*, Ex. B at 4). Elliot sued to recover earned overtime compensation, liquidated damages, reasonable attorney's fees, costs and prejudgment interest. (*See id.*, Ex. B at 6).

The two claims at issue in the current case were filed during the XL Specialty Policy period. On March 2, 2009, former employee Victor Alvarez filed a Notice ("Notice") of Filing Consent to Join as a member of the plaintiff class (the "*Alvarez* claim") in the *Elliot* case. (*See id.*, Ex. C at 2).

6

On March 19, 2009, Luis Puente also filed a Notice of Filing Consent to Join the *Elliot* case as a plaintiff (the "*Puente* claim"). (*See id.*, Ex. D at 2). Each Notice included a Notice of Consent to Join Pursuant to 29 U.S.C. § 216(b), which designated a legal representative and included the following statements:

> 1. I hereby consent, agree, and [sic] to become a Plaintiff in the lawsuit brought under the Fair Labor Standards Act, 29 U.S.C. §201, et seq.
>
> 2. I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any settlement herein approved by the named plaintiffs (as they may be substituted or amended), recommended by my attorneys and approved by the Court as fair, adequate, and reasonable.

(*See id.*, Ex. C at 4, Ex. D at 4).

Vozzcom notified XL Specialty of the *Elliot*, *Alvarez* and *Puente* claims on April 14, 2009, seeking coverage under the Policy. (*See* Notice of Removal, Ex. A at 3). XL Specialty denied coverage for the claims. (*See id.*).

On January 7, 2010, Vozzcom filed suit in state court against XL Specialty seeking declaratory relief and alleging breach of contract for the *Alvarez* and *Puente* claims. (*See id.*, Ex. A at 1). As exhibits to the Complaint, Vozzcom included parts of the Policy, the *Elliot* Complaint, and Richard Elliot's Notice of Consent to Join. (*See id.*, Ex. A). XL Specialty timely removed the case to federal court. (*See id.*). With its Motion to Dismiss, XL Specialty included as exhibits the complete Policy, the *Elliot* Complaint, the Alvarez and Puente Notices of Consent to Join (the "Notices"), the *Teixeira* and *DaSilva* Complaints, and the *Vozzcom I* and *II* Complaints. (*See* Mot., Exs. A-H).

Case No. 10-60213-CIV-ALTONAGA/Brown

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL 2431463, at *4 (11th Cir. Aug. 11, 2009) (citing *Iqbal*, 129 S. Ct. at 1949).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 . "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting FED. RULE CIV. P. 8(a)(2)).

8

Case No. 10-60213-CIV-ALTONAGA/Brown

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 2009 WL 2431463, at *3 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations.").

A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368. The Court may also consider other documents to be part of the pleadings for purposes of Rule 12(b)(6) where the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim. *Id.* at 1369.

### III.  ANALYSIS

XL Specialty seeks dismissal of Vozzcom's Complaint for three reasons: (1) the *Elliot* claim is not a claim first made during the XL Specialty Policy period; (2) the specific claim, prior notice and prior litigation exclusions of the XL Specialty Policy bar coverage for the *Elliot* claim; and (3) the doctrine of collateral estoppel bars Vozzcom from bringing suit.

**A.     Is the *Elliot* Claim a Claim First Made During the Policy Period?**

XL Specialty maintains its Policy does not afford coverage for the *Alvarez* and *Puente* claims because the claims are not "claims first made" during the XL Specialty policy period. (*See* Mot. at

9

Case No. 10-60213-CIV-ALTONAGA/Brown

11).[1] Rather, XL Specialty asserts the *Alvarez* and *Puente* claims are part and parcel of the *Elliot* claim, which was filed before the XL Specialty Policy period began.[2] (*See id.* at 11-14). XL Specialty characterizes Alvarez and Puente as additional plaintiffs in the *Elliot* action and not new claims. (*See id.* at 12). Even if the *Alvarez* and *Puente* claims are considered new claims made within the Policy period, XL Specialty maintains the Interrelated Claims Provision of the Policy would deem the *Alvarez* and *Puente* claims to be a single claim made on the same date as the *Elliot* claim. (*See id.* at 12-13).

Vozzcom disagrees. It points to the facts that the *Alvarez* and *Puente* claims were filed as Notices on March 2 and March 19, 2009 – well after the commencement of the XL Specialty Policy period – and that the claims meet the definition of "Claim" under the Policy. (*See* Resp. [D.E. 16] at 4-5). Because the Notices constitute "any written notice, including any request to toll or waive a statute of limitations or any such notice seeking monetary or non-monetary relief," Vozzcom maintains the *Alvarez* and *Puente* claims should be afforded coverage. (*Id.* at 5). Vozzcom also rebuts XL Specialty's characterization of the *Alvarez* and *Puente* claims as "Interrelated Wrongful Acts" because there are no facts regarding Alvarez or Puente's employment in either the *Elliot* Complaint or the Notices that would establish the *Alvarez* and *Puente* claims arise out of "the same or related or series of related facts, circumstances, transactions or events" (Mot., Ex. A at 19) as the

---

[1] Page citations to XL Specialty's Motion to Dismiss are to the pagination assigned by the on-line CM/ECF docket.

[2] In *Vozzcom II*, the Court found the *Elliot* claim to be first made in June 2007, when the *Teixeira* lawsuit was filed. *See Vozzcom II*, 2010 WL 1226084, at *4. The *Elliot* claim was not filed until January 7, 2009. *Id.*, 2010 WL 1226084, at *3. No matter which date is used, the *Elliot* claim pre-dates the XL Specialty Policy period.

Case No. 10-60213-CIV-ALTONAGA/Brown

*Elliot* claim.  (*See* Resp. at 7).  Vozzcom suggests the claims of the two joining plaintiffs may well be sufficiently distinctive to be later excluded from the *Elliot* class.  (*See id.*).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy.  As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court." *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  "Florida courts have said again and again that 'insurance contracts must be construed in accordance with the plain language of the policy.'" *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).  Furthermore, "[a] court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect." *Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767, 769 (11th Cir. 1999) (citing *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993)).  "Florida law requires that we resolve a conflict between the provisions of an insurance contract so as to afford maximum coverage to the policyholder." *Nu-Air Mfg. Co. v. Frank B. Hall & Co. of N.Y.*, 822 F.2d 987, 992 (11th Cir. 1987) (citing *Dyer v. Nationwide Mut. Fire Ins. Co.*, 276 So. 2d 6, 8 (Fla. 1973); *Oliver v. U.S. Fidelity & Guar. Co.*, 309 So. 2d 237, 238 (Fla. 2d DCA 1975), *cert. denied*, 322 So. 2d 913 (Fla. 1975)).

The first issue is whether the *Alvarez* and *Puente* claims constitute "claims made" under the Policy.  The parties rely on different definitions of a "Claim" under the Policy.  XL Specialty characterizes the *Alvarez* and *Puente* claims as a "any civil proceeding in a court of law or equity."

11

Case No. 10-60213-CIV-ALTONAGA/Brown

(Mot. at 9). If this definition is accepted, the operative date of the *Alvarez* and *Puente* claims is the date of the *Elliot* claim, which pre-dates the Policy and is not a "claim made" during the Policy period. Vozzcom points the Court to another definition of a Claim – also valid under the Policy – as "any written notice . . . seeking monetary or non-monetary relief." (Resp. at 5). Vozzcom's characterization of the claims is feasible because the *Alvarez* and *Puente* Notices are sufficient to constitute written notices of valid claims under the Policy. Because the allegations of the Plaintiff's Complaint are taken as true for the purposes of a Motion to Dismiss, sufficient facts are alleged in the Complaint to support Vozzcom's characterization of the *Alvarez* and *Puente* claims as eligible for coverage under the Policy.

The second question is whether the *Alvarez* and *Puente* claims are subject to exclusion because they are "Interrelated Wrongful Acts." XL Specialty would have the Court infer that because the *Alvarez* and *Puente* claims were filed in a class action suit, they are "Interrelated Wrongful Acts" tied to the *Elliot* claim and subject to exclusion. (*See* Mot. at 9). Without more than the Notices, however, there is insufficient information to conclude these two new claims are related to the *Elliot* claim.[3] Joinder as to Alvarez and Puente in the *Elliot* claim may subsequently prove ineffective because their claims are not sufficiently similar to the defined *Elliot* class. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216-19 (11th Cir. 2001) (explaining opt-in class action as a two-stage process with respect to class certification, which includes the requirement that

---

[3] Vozzcom is correct in noting XL Specialty exceeded the scope of review permitted a motion to dismiss, which is limited to the plaintiff's complaint and those documents central to the plaintiff's claims. *See Brooks*, 116 F.3d at 1368-69. *Vozzcom I* and *Vozzcom II* were decided on motions for summary judgment.

Case No. 10-60213-CIV-ALTONAGA/Brown

plaintiffs demonstrate they are "similarly situated"). Considering the Complaint in a light most favorable to Vozzcom, XL Specialty's Motion to Dismiss cannot be granted on its "claims made" theory.

**B.     Is the *Elliot* Claim Subject to Exclusion Under the Policy Terms?**

XL Specialty also asserts that the several exclusion provisions of the Policy provide sufficient grounds to dismiss Vozzcom's Complaint. (*See* Mot. at 12-15). Specifically, XL Specialty points to the Specific Claims, the Prior Notice, and the Prior Litigation Exclusions as barring coverage of the *Elliot* claim. (*See id.*). To accept XL Specialty's position, the Court would first have to find that the *Alvarez* and *Puente* claims are the same claim as the *Elliot* claim, or that the three claims are interrelated. However, the Complaint alleges no facts regarding the Alvarez and Puente plaintiffs that would permit such a conclusion. In contrast, at summary judgment in *Vozzcom II* the insurance carrier established that Plaintiff Elliot was a former cable installer who worked during the same time period and had the same FLSA grievances as the plaintiffs in *Teixeira* and *DaSilva*. To suggest that a similar factual basis exists here solely because the *Elliot*, *Teixeira* and *DaSilva* complaints are similar is not a sufficient ground to grant this Motion to Dismiss.

**C.     Does Collateral Estoppel Bar Vozzcom's Suit?**

Finally, XL Specialty raises collateral estoppel as a bar to Vozzcom's Complaint. (*See* Mot. at 15). XL Specialty asserts the *Vozzcom II* decision, in which the Court found the *Elliot* claim to be a claim made at the time of the *Teixeira* and *DaSilva* claims, resolves the issue at the heart of the present case. (*See id.*). Vozzcom disagrees and points to three distinctions between this and the previous *Vozzcom* cases: different parties, different contracts and different claims. (*See* Resp. at 10).

Case No. 10-60213-CIV-ALTONAGA/Brown

"Collateral estoppel is issue preclusion; it refers to the preclusive effect of a judgment in foreclosing the relitigation of a particular issue in a subsequent proceeding . . . ." *S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477, 1483 (11th Cir. 1987) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). Certain prerequisites must be met for collateral estoppel to apply:

> (1) the issue at stake must be identical to the one involved in the prior litigation, (2) the issue must have been actually litigated in the prior suit, (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.*, 833 F.2d at 1483 (citing *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)).

XL Specialty has not shown that the issue at stake in this litigation is identical to the issues in the earlier *Vozzcom* cases. While XL Specialty may be able to establish the first prong of the prerequisites at some point in the future, the necessary evidence is not apparent on the face of the current Complaint. Without more information about the *Alvarez* and *Puente* claims, XL Specialty cannot show that the issue in this case is identical to the one involved in *Vozzcom I* and *Vozzcom II*. XL Specialty's Motion to Dismiss also fails on this ground.

## IV. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that

Case No. 10-60213-CIV-ALTONAGA/Brown

1. Defendant, XL Specialty Insurance Company's Motion to Dismiss **[D.E. 4]** is **DENIED**.

2. Defendant, XL Specialty Insurance Company's Motion to Stay Discovery **[D.E. 25]** is **DENIED as moot.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of April, 2010.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record